UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ADRIAN FATAN | § | |
| VS. | § | CIVIL NO. 4:11cv812 |
| FRED TILLMAN | § | **JURY DEMAND** |

## COMPLAINT

Adrian Fatan, through his attorney, brings this action pursuant to 42 U.S.C. § 1983, against Fred Tillman, a police officer in Denison, Texas, in his individual and official capacity, for illegal entry and seizure, false arrest and imprisonment and malicious prosecution , in violation of the Fourth and Fourteenth Amendment. Additionally, Mr. Fatan is asserting state pendent tort claims of illegal entry and seizure, malicious prosecution, intentional infliction of emotional distress and false imprisonment in violation of Texas tort law.

Mr. Fatan is seeking $ 200,000 in actual damages, $ 5,000,000 in punitive damages and reasonable attorney fees pursuant to 42 U.S.C. § 1988.

## Jurisdiction

The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331. The Court has jurisdiction over the state pendent tort claims pursuant to 28 U.S.C. § 1367.

## **Factual and Procedural History**

1. Adrian Fatan is a United States citizen who came to the United States from Romania in 1991, after one failed attempt and one escape from Romania as a political prisoner.

2. Mr. Fatan moved to Denison, Texas in August of 2001 and bought a house at 300 W. Texas Street, Denison, Texas.

3. Mr. Fatan is employed by International Business Machines ("IBM") as a business analyst. Mr. Fatan also owns Safe Cycling School of Grayson County, Texas.

4. On December 20, 2009, Mr. Fatan had a birthday dinner at his home, 300 W. Texas, Denison, Texas, and had invited Terri Walker, Oppie Renee Moore and Brad King. Mr. Fatan had prepared steaks and rack of lamb along with other items for his guest. The dinner began around 9:00 p.m.

5. Shortly after 10:00 p.m., Mr. Fatan and Ms. Walker had stepped out on the screened porch to smoke a cigarette. There was a computer playing music, but the two were talking and the music was not loud.

6. The property at 300 W. Texas, is fenced in and a person who wishes to enter the property must open a gate prior to entering.

7. Mr. Fatan saw a light shining through the blinds of the porch, and Mr. Fatan stepped outside of the enclosued porch onto an entry porch.

8. Mr. Fatan saw a person getting out of a car and shine a spotlight and flashlight into Mr. Fatan's face. Mr. Fatan asked the person to identify themselves and take the "light" off of Mr. Fatan's face.

9. The individual, later identified as Sgt. Fred Tillman of Denison Police Department, failed to identify himself and kept the spotlight and flashlight in Mr. Fatan's eyes and began to approach Mr. Fatan. Mr. Fatan could not see beyond the light shining in his eye to identify a uniform or who the person might be.

10. Mr. Fatan again requested the person to lower the light and asked the unknown individual what they wanted.

11. After receiving no response, Mr. Fatan demanded the person quit approaching him and if he was with a police department to identify himself.

12. The individual failed to identify themselves and continued to approach through the gate.

13. Mr. Fatan believed that the individual was a threat to him based upon not knowing who they were and their refusal to identify themselves. Mr. Fatan turned around and re-entered his enclosed porch, picked up a phone and was attempting to dial 911.

14. Upon Mr. Fatan re-entering the porch and trying to dial the phone, Sgt. Tillman broke the door into the house and confronted Mr. Fatan. When Sgt. Tillman entered he began looking around the room, but there was only food entrees

and furniture. Sgt. Tillman had no warrant, probable cause, or reasonable suspicion that a crime had been committed or a basis for entering Mr. Fatan's house.

15. Mr. Fatan asked Sgt. Tillman "why are you in my house, what do you want from me?" Sgt. Tillman did not respond.

16. Mr. Fatan was aggravated that Sgt. Tillman had failed to identify himself, scared him into thinking he was about to be the victim of a crime, and broke into his house. Mr. Fatan continued to ask what Sgt. Tillman wanted in his house. Sgt. Tillman finally responded that "you need to calm down."

17. Mr. Fatan remained agitated and asked why Sgt. Tillman had entered his house and requested the basis for the illegal entry or requested Sgt. Tillman to leave. Mr. Fatan asked if it was the officer's intent to shoot him or arrest him. Sgt. Tillman remained standing without giving his reasoning for illegally entering the house or the property. Mr. Fatan turned around and stated if you "are going to arrest me, here" and presented his arms behind his back. When Mr. Fatan turned around and presented his arms, Sgt. Tillman put him in handcuffs and arrested him without telling anyone what Mr. Fatan was being arrested for. The arrest was unlawful and without a warrant or probable cause. Sgt. Tillman had realized that he had conducted an illegal act, and thus arrested Mr. Fatan in an attempt to cover this issue.

18. The Denison Police Department, of which Sgt. Tillman is a part of, has an established pattern or practice of violating citizen's rights.

19. Sgt. Tillman later wrote an arrest report in which he stated there was a noise complaint, and thus was arresting Mr. Fatan for the violation of a noise ordinance and evading detention.[1] However, there has never been a record presented that there was a noise complaint, and all witnesses present allowed that the music could not be heard much further than the screened in porch.

20. Sgt. Tillman wrote in his report that Mr. Fatan had evaded arrest or detention. However, there was no evasion of arrest or detention and Sgt. Tillman's report was false as to his basis for the arrest and his conduct before and during the arrest. It was written solely to cover for Sgt. Tillman's illegal acts.

21. Based upon the false report and false allegations of Sgt. Tillman, Mr. Fatan was booked into the Grayson County Jail, until he could be bailed out the following day. Additionally, based upon the false reports and false allegations of Sgt. Tillman, a criminal cause of action was filed against Mr. Fatan in Grayson County styled *State of Texas v. Adrian Fatan,* 2010-2-0212 in County Court at Law Number One, Grayson County, Texas, as well as the municipal complaint in Denison, Texas.

---

[1] This noise complaint was later dismissed by the Denison City Attorney.

22. Mr. Fatan began attempting to try to find out why this injustice had happened to him, a new American citizen who had studied the Constitution and had come from a repressive regime in Romania where Sgt. Tillman would be the norm. He contacted various federal agencies, the Denison Police Department, the local Texas Ranger, various politicians including Senator Cornyn, the ACLU, nearly a dozen attorneys and President Obama in an attempt to see how this injustice was allowed in the United States.

23. Ten months later, Mr. Fatan appeared for a jury trial in County Court at Law Number One. Sgt. Tillman testified falsely during the trial and his false testimony became apparent to the jury, who after the trial noted that the Officer was lying. Mr. Fatan was found not guilty by the jury.

24. Mr. Fatan paid approximately $ 5,000 in legal and bond fees challenging the false allegations. Mr. Fatan lost wages and emotional distress of approximately $ 195,000 due to these false allegations. Additionally, because of this allegation, Mr. Fatan's license to carry a concealed firearm was suspended in July of 2010, he lost a large amount of business in his Safe Cycling School because it required participation with law enforcement, and he had to spend a lot of his own capital in showing that Sgt. Tillman had lied.

25. Mr. Fatan is bringing this action against Sgt. Fred Tillman a police officer in Denison, Texas, in his individual and official capacity, for illegal seizure, false

imprisonment and malicious prosecution , in violation of the Fourth and Fourteenth Amendment. Additionally, Mr. Fatan is asserting a state pendent tort claims of assault, malicious prosecution, intentional infliction of emotional distress and false imprisonment in violation of Texas tort law.

Mr. Fatan is seeking $ 200,000 in actual damages, $ 5,000,000 in punitive damages and reasonable attorney fees pursuant to 42 U.S.C. § 1988.

## Analysis

*Illegal Entry and Seizure*

It was clearly established on the night of the birthday party that police could not enter the house to make warrantless arrests unless there were probable cause or exigent circumstances. *See Duncan v. Storie,* 869 F.2d 1100, 1102 (8th Cir.), *cert. denied*, 493 U.S. 852, 107 L. Ed. 2d 110, 110 S. Ct. 152 (1989).  However, a federal or state law enforcement officer who conducts a warrantless search in violation of the Fourth Amendment will not be held personally liable for money damages if it is found that a reasonable officer could have believed the search to be lawful under the Fourth Amendment in light of clearly established law and the information possessed by the searching officer; for the purposes of this inquiry, the searching officer's own subjective beliefs about the legality of the search are irrelevant; the fact that warrantless searches not supported by probable cause and exigent circumstances violate the Fourth Amendment does not mean that a

7

particular warrantless search is objectively legally unreasonable. *Anderson v. Creighton,* 483 U.S. 635 (1987).

In this case, it is unclear why Sgt. Tillman decided to enter Mr. Fatan's home. However, it is clear that he did not have probable cause or a reasonable basis to enter nor were there exigent circumstances present. Sgt. Tillman violated the Fourth Amendment.

*False Arrest and Imprisonment*

The right to be free from arrest without probable cause is a clearly established constitutional right." *Mangieri v. Clifton,* 29 F.3d 1012, 1016 (5th Cir. 1994). The test for probable cause is whether the officer, at the time of arrest, "had knowledge that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime." *Id.* (citing *Duckett v. City of Cedar Park,* 950 F.2d 272, 278 (5th Cir. 1992)). "Police officers who reasonably but mistakenly conclude that probable cause is present are entitled to qualified immunity." *Id.* at 1017 (citing *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534 (1991)).

In *Devenpeck v. Alford,* 543 U.S. 146, 125 S.Ct. 588 (2004), the Court considered a claim of false arrest under the Fourth Amendment and concluded that a subjective analysis of the officer's state of mind is irrelevant to the analysis. *Id.* at 153. The only question is whether, given the facts known to the officer, he had

probable cause to arrest the defendant for a crime. *Id.* Applying the *Devenpeck* standard in the qualified immunity context, the inquiry is whether, given the facts known to the Officer, he could have reasonably believed that he had probable cause to arrest Mr. Fatan for any crime. In this case, Sgt. Tillman did not and the arrest was a sham to cover for his own misconduct. This false arrest and imprisonment continued via the deprivation of Mr. Fatan's liberty until he was found not guilty in September of 2010. The mark of this misconduct remains on Mr. Fatan in the form of public records which show his arrest on two frivolous criminal charges which he had to spend 10 months trying to rectify.

*Malicious Prosecution*

At common law, the tort of malicious prosecution has the following definition:

> The tort of malicious prosecution of criminal proceedings occurs when one citizen initiates or procures the initiation of criminal proceedings against an innocent person, for an improper purpose and without probable cause therefore, if the proceedings terminate favorably for the person thus prosecuted. [2]

Under Texas law, malicious prosecution includes seven elements: (1) prosecution against the plaintiff; (2) causation by the defendant; (3) termination of the prosecution in the plaintiff's favor; (4) the plaintiff's innocence; (5) the absence of probable cause for the proceedings; (6) malice in filing the charge; and (7)

---

[2] Fowler V. Harper Et. Al. THE LAW OF TORTS § 4.1 (3d ed. 1996)

damage to the plaintiff. *Hart v. O'Brien,* 127 F.3d 424, 451 (5th Cir. 1997) *cert. denied*, 119 S.Ct. 868 (1999). Likewise, under 42 U.S.C. § 1983, the same elements are present. *Evans v. Ball,* 168 F.3d 856, 863 (5th Cir. 1999). Additionally, under Federal law analysis, "there is a federal right to be free from bad faith prosecutions." *Wheeler v. Cosden Oil & Chem. Co.,* 734 F.2d 254, 258 (5th Cir. 1984). Bad faith is defined as without probable cause. *Id.* However, in order to establish malicious prosecution under state and federal law, all elements must be present. *Evans v. Ball,* 168 F.3d at 863.

The Fifth Circuit has clarified that under federal § 1983 causes of action, malicious prosecution, standing alone, is not a violation of the United States Constitution. *United States v. Castellano,* 352 F.3d 939, 942 (5th Cir. 2003)(en banc) The claim generally must rise out of the deprivation of the Fourth Amendment. *Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807 (1994). Despite the Albright holding, the Fifth Circuit held in Castellano that the State's knowing use of perjured testimony to attempt to gain a wrongful conviction deprives a defendant of his long recognized right to fair trial secured by the Due Process Clause of the Fourteenth Amendment. *United States v. Castellano,* 352 F.3d at 942.

In this case, the elements of malicious prosecution are met. Sgt. Tillman filed a false report and continued to submit false testimony to the point that the jury

10

determined he was a liar and found Mr. Fatan not guilty. Mr. Fatan should be entitled to recover based on this misconduct.

*Pendent State Claims*

### Illegal Arrest and Seizure

In Texas, an officer may not enter a residence of a citizen without a warrant unless 1) the person consents, or 2) exigent circumstances require the officer making the arrest enter the residence without the consent of a resident or without a warrant. Tex. Code of Crim. Proc. Art. 14.05. Tex. Const. Art. I § 9 provides that "The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation."

In the present case, Sgt. Tillman violated state law and the Texas Constitution and there is a state tort remedy for such a violation.

### Malicious Prosecution

Under Texas law, malicious prosecution includes seven elements: (1) prosecution against the plaintiff; (2) causation by the defendant; (3) termination of the prosecution in the plaintiff's favor; (4) the plaintiff's innocence; (5) the absence of probable cause for the proceedings; (6) malice in filing the charge; and (7) damage to the plaintiff. *Hart v. O'Brien,* 127 F.3d 424, 451 (5th Cir. 1997) *cert.*

*denied*, 119 S.Ct. 868 (1999); *See also Martin v. Thomas,* 973 F.2d 499 (5th Cir. 1992). Sgt. Tillman took a course of conduct which amounted to malicious prosecution against Mr. Fatan under state tort law.

### Infliction of Emotional Distress

Texas, like many other states has adopted the definition of intentional infliction of emotional distress set out in the Restatement (Second) of Torts § 46 (1965). *See Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex. 1993). The Restatement elements of intentional infliction of emotional distress are: 1) the defendant acted intentionally or recklessly, 2) the conduct was extreme and outrageous, 3) the actions of the defendants caused the plaintiff emotional distress, and 4) the emotional distress suffered by the plaintiff was severe. *Id.* According to the Restatement, liability for outrageous conduct should be found "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*

In the present case, the conduct of Sgt. Tillman rises to the level of intentional infliction of emotional distress and continued through his testimony at trial in September of 2010.

**False Imprisonment**

Under Texas tort law, false imprisonment has been defined as ". . . the direct restraint by one person of the physical liberty of another without adequate legal justification." *Kroger Co. v. Demakes,* 566 S.W.2d 653 (Tex.Civ.App.-Houston (1st Dist.) 1978, writ ref'd n.r.e.); *J.C. Penney Co. v. Duran* (Tex.Civ.App.-San Antonio 1972, writ ref'd n.r.e.). *See Reicheneder v. Skaggs Drug Center,* 421 F.32d 307 (5th Cir. 1970) The essential elements of false imprisonment are: 1) a willful detention of the person; 2) against the consent of the party detained; and 3) a detention without authority of law. *Sanchez v. Garza,* 581 S.W.2d 258 (Tex.Civ.App.-Corpus Christi 1979, no writ).

Sgt. Tillmans actions include the false imprisonment of Mr. Fatan for a crime that he did not commit in order to cover up for their own abuse of power. This was certainly a false arrest under any standard.

*The right to reasonable attorney's fees*

42 U.S.C. § 1988 provides, in relevant part: "In any action or proceeding to enforce a provision of section[] . . . 1983 . . . of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). In *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566 (1992), the Supreme Court stated in the context of fees under § 1988:

> Therefore, to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought . . . or comparable relief through a consent decree or settlement . . . . Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement. Otherwise the judgment or settlement cannot be said to "affect the behavior of the defendant toward the plaintiff." Only under these circumstances can civil rights litigation effect "the material alteration of the legal relationship of the parties" and thereby transform the plaintiff into a prevailing party. In short, a plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.

*Id.* at 111-12 (alteration in original) (internal citations omitted).

### Conclusion and Prayer

Mr. Fatan is requesting that this action be set for jury trial, and upon return of a monetary verdict in his favor, reasonable attorney fees be awarded in this action pursuant to 42 U.S.C. § 1988.

Respectfully submitted,

_/s/Don Bailey_____
Don Bailey
Attorney for Mr. Fatan